# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In Re: Thiago D. Vinhas and Elaine C. Vinhas

THIAGO D. VINHAS and ELAINE C. VINHAS,

                Appellants,

v.                                 Case No:   6:24-cv-2192-GAP

                             (Bankruptcy Case No. 6:21-bk-51/6:23-ap-90)

SAMI BANOUB,

                Appellee.

_____

## MEMORANDUM & OPINION

This cause came before the Court for consideration without oral argument on appeal from the U.S. Bankruptcy Court for the Middle District of Florida's Order Granting in Part Creditor's Motion for Entry of Stipulated Final Judgment and entry of Final Judgment (Doc. 1-3; Doc. 1-4). The Court has considered Appellants' Opening Brief (Doc. 17), Appellee's Answer Brief (Doc. 20), Appellants' Reply Brief (Doc. 21), and the Bankruptcy Record on Appeal (Doc. 10 *et seq*; Doc. 11 *et seq*).

## I.    Background

### A. *History of the Parties' Dispute*

This appeal ultimately arises from a landlord-tenant dispute that began when Appellants Thiago D. Vinhas and Elaine C. Vinhas ("Appellants") signed an agreement with Appellee Sami Banoub ("Banoub") to lease a home in Orlando on May 20, 2014. Doc. 10-1, ¶ 1.

Upon Appellants' departure from the home in 2018, Banoub filed a complaint in state court alleging that Appellants knowingly breached their lease and caused significant damage to the property. *Id.*, ¶¶ 1-2; *see also Banoub v. Vinhas de Moraes*, No. 2018-CA-011848-O (Fla. 9th Cir. Ct. filed Oct. 30, 2018). On December 4, 2019, the state court entered judgment in favor of Banoub, finding Appellants liable for $20,457.74 in damages. Doc. 10-13 at 9. On July 17, 2020, the state court amended its judgment to award Banoub an additional $32,170.33 in attorney's fees and costs, bringing Appellants' total liability to $52,628.07.[1] *Id.* at 15-16; *see also* Doc. 17 at 3-4.

On January 7, 2021, Appellants filed a petition for bankruptcy pursuant to Chapter 13.[2] *See In re Vinhas and Vinhas*, 6:21-bk-51-GER, Doc. 1 (Bankr. M.D. Fla. Jan. 7, 2021). On August 9, 2023, Banoub initiated an adversarial proceeding in

---

[1] The lease underlying this dispute holds Appellants liable to Banoub for legal expenses, including reasonable attorney's fees, incurred enforcing the agreement. Doc. 10-1 at 25; Doc. 10-2 at 6, 8, 10 (Banoub's Motion for Summary Judgment outlining his entitlement to attorney's fees under the lease and Fla. Stat. § 83.48); Doc. 10-13 at 9, 16 (state court granting Banoub's Motion for Summary Judgment and "reserv[ing] jurisdiction to enforce this Final Judgment and to grant any further relief necessary under the circumstances").

[2] The Bankruptcy Court ordered that Appellants' petition be converted to a Chapter 7 case on March 9, 2023. *In re Vinhas and Vinhas*, 6:21-bk-51-GER, Doc. 259 (Bankr. M.D. Fla. Jan. 7, 2021).

Appellants' bankruptcy case objecting to the dischargeability of their debt flowing from the state court judgment pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).[3] *See Banoub v. Vinhas et al*, 6:23-ap-90-GER, Doc. 1 (Bankr. M.D. Fla. Aug. 9, 2023) [hereinafter the "Adversarial Proceeding" or "AP"]. It is the Bankruptcy Court's Final Judgment in Banoub's AP that prompted Appellants' instant petition for review. *See* Doc. 1.

In his AP Complaint Objecting to Dischargeability ("COD"), Banoub stated that, "[a]s of August 9, 2023, [his] claim is in the amount of $253,303.95." Doc. 10-1, ¶ 29. In Count I (and using similar language in Counts II and III) Banoub's COD recounted that:

> As a proximate result of [Appellants'] conduct, **[Banoub] incurred damages in the amount of $52,628.07, plus additional attorney[']s fees and costs incurred in enforcing the Judgment**…which continue to be incurred as a result of the post-petition actions taken by the [Appellants] that are dilatory and prejudicial, and intended to cause harm to Plaintiff. Due to the contractual damages and [Appellants'] failure to indemnify [Banoub], **the total amount of the damages is now $253,303.95. [Banoub] continues to incur**

---

[3] 11 U.S.C. § 523 states:

    a)   A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

        …

      (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

        …

      (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

**damages.**"

Doc. 10-1, ¶ 37 (emphasis added); *see id.*, ¶¶ 45, 55.

However, the parties negotiated a settlement to resolve Banoub's AP (the "Agreement"). *See* Doc. 1-3; *see also* BC Doc. 311; AP Doc. 25. Executed on May 8, 2024,[4] the Agreement stated:

> 2. On or before May 15, 2024, [Appellants] shall pay the amount of **$5,000.00** via wire transfer to Banoub's counsel, and such payment shall occur **monthly on the 15th** thereafter until a **total of $30,000.00** has been paid (the "Payments").[5]

Doc. 11-10, ¶ 2 (emphasis added). The Agreement set forth specific contingencies in the event of a default by Appellants:

> a. By [Appellants]: In the event that [Appellants] fail[] to perform the duties and obligations described in this Agreement, Banoub shall be entitled to:
>
> > i. Entry of Judgment against [Appellants] **in the AP Action** under 11 U.S.C. § 523(a)(4) and (a)(6) **for the full amount of the damages sought in the operative complaint**, including any attorney's fees and costs incurred as a result of filing and prosecuting the AP Action; **and**

---

[4] The Bankruptcy Court approved the Agreement on June 11, 2024. Doc. 11-11; *see also* Doc. 10-16.

[5] Upon payment of the $30,000, the parties agreed to mutually release each other from all claims and actions they may have against the other party "for, upon, or by reason of any matter, thing, or cause, whatsoever, from the beginning of the world to the day of these presents." Doc. 11-10, ¶ 4.

> ii. Entry of Amended Final Summary Judgment **in the State Court Action for the full amount of the damages sought in the operative complaint**, including any attorney's fees and costs incurred as a result of filing and prosecuting the AP Action.

*Id.*, ¶ 14 (emphasis added).

It also contained a non-waiver provision which stated:

> 16. The waiver by any Party of a breach or threatened breach of any of the terms of this Agreement **shall not be construed as a waiver of any subsequent breaches** by any Party, or as an amendment or modification of the terms of this Agreement.

*Id.*, ¶ 16 (emphasis added). Finally, the Agreement expressly provides that:

> d. Any claim or litigation arising from or in connection with or related to this Agreement, including enforcement hereof, **shall be exclusively maintained in the Bankruptcy Court**, and the Parties hereby submit to jurisdiction over them by the Bankruptcy Court.[6]

*Id.*, ¶ 17(d) (emphasis added).

### B. *Breach of the Agreement*

On August 21, 2024, Banoub filed a Notice of Default in the Adversarial Proceeding alleging that Appellants breached the Agreement by failing to make their August payment. Doc. 10-17, ¶¶ 7-8. In his Notice, Banoub recognized that

---

[6] In its Order abating the Adversarial Proceeding subject to the Agreement, the Bankruptcy Court directed the parties to "notify the Court upon …a default by one of the parties." AP Doc. 25 at 2.

Appellants' June and July payments were also untimely, but that he had elected not to declare a default when they were ultimately paid in full.[7] *Id.*, ¶¶ 4, 6.

On September 19, 2024, Banoub filed a Motion for Entry of Stipulated Judgment in the AP pursuant to the default provisions in the Agreement. *See* Doc. 10-18. Banoub contended that, for the purposes of the stipulated judgment, his damages to be declared non-dischargeable totaled $283,022.33. *Id.*, ¶ 14. He sought to have that amount, plus continually accruing post-judgment interest, declared non-dischargeable under §§ 523(a)(4) and (a)(6). *Id.*, ¶ 15; *see also* Doc. 10-1 at 15.

On October 15, 2024, Appellants filed a Memorandum in Opposition arguing that the Bankruptcy Court should "exercise its inherent equitable powers" to deny Banoub's Motion. Doc. 11-1, ¶ 21. Appellants alleged that on August 21, 2024, along with a partial ($4,000) payment, they sent a request to Banoub's counsel to modify the Agreement's payment schedule—and eventually offered to pay the remaining $11,000 balance within short order. *Id.*, ¶¶ 16, 18. However, they complain that Banoub never responded to these offers, and instead proceeded with enforcement of the default. *Id.*, ¶¶ 17, 19.

The Bankruptcy Court scheduled a hearing on Banoub's Motion for November 12, 2024. *See* AP Doc. 33. At the hearing, and in their Opposition,

---

[7] All payments were due on the 15th of each month. *See* Doc. 11-10, ¶ 2.

Appellants argued that because Banoub accepted their second and third payments late (in June and July), they "had a well-grounded belief that [Banoub] would continue to do so." Doc. 11-1, ¶ 20; *see also* Doc. 11-17. Moreover, Appellants contended, since Banoub had not repudiated their $4,000 partial payment (80% of the full payment), the Bankruptcy Court should have considered him estopped from declaring a default on the August payment—and they should have been granted the opportunity to cure by paying the remaining $11,000 balance as offered. *See* Doc. 11-7 at 9:15-10:3; *see also* Doc. 11-1, ¶ 20. Appellants also argued that Banoub's damages calculation grossly mischaracterized the COD and that his damages should be capped at $50,753.04. Doc. 11-7 at 13:16-14:10.

Banoub countered at the hearing that, although he had recently requested the $4,000 partial payment from his counsel, he could not refuse it when it was made because it was a wire transfer. *Id.* at 16:14-17, 17:1-6. Moreover, Banoub argued that Appellants' *partial* payment amounted to a failed proposal to amend the settlement agreement and maintained he was free to move forward with default proceedings. *Id.* at 17:16-24; *see also* Doc. 11-10, ¶ 17(h). Banoub also disputed Appellants' selective reading of the COD's damages provisions, arguing that the COD plainly includes the amount from the state court Judgment *plus* the attorney's fees and costs incurred attempting to satisfy that Judgment. *Id.* at 15:2-7, 16:7-8. Counsel for Banoub defended the attorney's fees calculation as a direct result of Appellants'

choice to "play games every single step of the way." Doc. 11-7 at 15:15-17; *see also, e.g.*, Doc. 10-1, ¶ 37.

#### C. The Bankruptcy Court's Order

On November 18, 2024, the Bankruptcy Court published an Order Granting in Part Motion for Entry of Stipulated Judgment. Doc. 1-3. In its Order, the Bankruptcy Court held that Appellants "defaulted under the Agreement" and that Banoub was entitled to a judgment declaring his damages non-dischargeable.[8] *Id.* at 4. It went on to find that the phrase, "full amount of the damages sought in the operative complaint," referenced in paragraph 14 of the Agreement, actually referred to the complaint that Banoub filed in the state court action—not the COD in the Adversarial Proceeding. *Id.*, at 4-5. Thus, reasoned the Bankruptcy Court, "it is appropriate for the state court to determine" the damages. *Id.* at 5. Its Order directed Banoub to seek entry of an Amended Final Summary Judgment in the state case, declared that the Amended Final Summary Judgment "to be entered" in state court is non-dischargeable pursuant to §§ 523(a)(4) and (6), and entered Final Judgment for Banoub in the AP. *Id.*

---

[8] Appellants recognize that, although the Bankruptcy Court did not expressly rule on the waiver issue below, its finding of default makes clear that it was not persuaded by their estoppel arguments. *See* Doc. 17 at 3, n. 2.

On December 3, 2024, Appellants filed their Notice of Appeal of the Bankruptcy Court's Order and Final Judgment entered on November 18, 2024. Doc. 1. The matter has been fully briefed and is ripe for review.

## II.    Legal Standard

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.2003). However, under 28 U.S.C. § 158(a), district courts have appellate jurisdiction over "final judgments, orders, and decrees…of bankruptcy judges entered in cases and proceedings…under section 157." *See also In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). In a bankruptcy proceeding, an order is final if it "resolves a particular adversary proceeding or controversy, rather than the entire bankruptcy litigation." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007) (internal quotations omitted).

"The district court in a bankruptcy appeal functions as an appellate court in reviewing the bankruptcy court's decision." *In re Williams*, 215 F.3d 1295, 1296 (11th Cir. 2000). However, "[n]either the district court nor this Court is authorized to make independent factual findings; that is the function of the bankruptcy court." *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990). "The [b]ankruptcy [c]ourt's findings of fact will not be set aside unless clearly erroneous." *In re Gen. Dev. Corp.*, 84 F.3d 1364, 1367 (11th Cir. 1996). "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district

court…must remand the case to the bankruptcy court for the necessary factual determination." *Id.* (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987)).

However, this deferential standard "does not apply when determining the propriety of the [b]ankruptcy [j]udge's conclusions of law[.]" *In re Gen. Dev. Corp.*, 84 F.3d at 1367. District courts review the bankruptcy court's legal conclusions *de novo. In re Bullock*, 2025 WL 72997, *2 (M.D. Fla. Jan. 10, 2025) (citing *Finova Cap. Corp. v Larson Pharmacy, Inc.*, 425 F.3d 1294, 1299-1300 (11th Cir. 2005)).

### III.    Analysis

"[T]he substantive law of the forum state governs issues of state law that arise in bankruptcy proceedings." *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009) (quoting *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008)). "A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). "Therefore, we apply the law of Florida, the forum state, to determine the meaning of the settlement agreement." *Id.*; *see also Lee v. Chmielewski*, 290 So.3d 531, 534 (Fla. Dist. Ct. App. 2019) ("Settlement agreements are governed by contract law.").

### A. Default

Appellants do not dispute that their two late payments breached the express terms of the Agreement before Banoub declared a default. *See, e.g.*, Doc. 17 at 5-6 (recognizing that Banoub did not receive the June or July payments on the 15th of the month as required). Appellants further acknowledge that they breached the Agreement again in August by wiring a partial payment to Banoub's counsel six days after full payment was due. Doc. 17 at 5. However, they ambiguously contend that Banoub waived his right to declare Appellants in default "or should be otherwise estopped from declaring a default." *Id.* at 7.

The non-waiver provision in the Agreement clearly precludes Appellants' first, pattern-of-conduct estoppel argument.[9] *MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265 (11th Cir. 1999) (acknowledging that Florida courts recognize anti-waiver provisions as contractual modifications of the common law rules of waiver and estoppel). Even if it did not, Banoub's acceptance of the late second and third payments does not establish a qualifying pattern of conduct that would estop him

---

[9] In 1973, a Florida appellate court, apparently conflating principles of waiver and estoppel, held in an auto-loan repossession case that a non-waiver provision did not preclude "the right of the buyer to rely upon prior dealings." *Ford Motor Credit Co. v. Waters*, 273 So. 2d 96, 99-100 (Fla. Dist. Ct. App. 1973). Later cases, however, coalesced around the standard that, where a "[party] did not expressly waive any of his rights, and the only substantial evidence of implied waiver was his acceptance of late rental payments…he cannot be deemed to have waived the [other party's] failure of performance." *Philpot v. Bouchelle*, 411 So. 2d 1341, 1344-45 (Fla. Dist. Ct. App. 1982).

from declaring a default on Appellants' late (*and* partial) fourth payment. *See Kelly Tractor Co. v. R.J. Canfield Contracting, Inc.*, 579 So.2d 261, 264 (Fla. Dist. Ct. App. 1991) (holding that creditor's acceptance of only two late payments on a twelve-month lease failed to support debtor's estoppel defense).

Appellants also attempt to conjure an estoppel argument—without a single legal citation—from the contention that, because Banoub did not return their partial payment in August, he is estopped from declaring default on that month's payment. Doc. 21 at 5-6. This wholly unsupported argument similarly fails on its face. It goes without saying that in the absence of an express agreement to the contrary, "a partial payment of a legal obligation does not act to satisfy and discharge that obligation.' " *Brody Irrevocable Grantor Tr. No. 2 v. Brody*, 322 So. 3d 150, 154 (Fla. Dist. Ct. App. 2021). Moreover, the Agreement itself states plainly that "[a]n amendment to this Agreement is valid only if the amendment is in writing and is signed by all parties." Doc. 11-10, ¶ 17(h). Appellants have made no showing that any such amendment or superseding agreement exists.[10]

Critically, Appellants remain in default today. *See* Doc. 11-7 at 10:1-11:20. Even if the Court were to credit their half-baked arguments, Appellants do not

---

[10] In fact, they readily admit that Banoub ignored their proposed amendments to the payment schedule and "proceeded to enforce the default[.]" Doc. 17 at 6.

contest that they did not make any further payments under the Agreement after August. *See, e.g.,* Doc. 17 at 6; Doc. 11-7 at 10:1-11:20. Thus, Banoub could simply refile the present underlying Notice of Default and Motion for Entry of Stipulated judgment based on the September, October, or November defaults rendering any such finding superfluous. *See* Doc. 11-7 at 17:10-12 ("[I]t sounds like [Appellants]…[are] still in default regardless because the payments weren't made throughout.").

Therefore, because the Agreement's non-waiver provision is controlling and, in the alternative, there was neither a pattern of conduct nor an acceptance of partial payment estopping Banoub from declaring a default on August 21, 2024, the Bankruptcy Court's Order finding that Appellants defaulted on the Agreement is due to be **AFFIRMED.**

> B. *The "Operative Complaint"*

The Bankruptcy Court's determination that the "operative complaint" language in the Agreement refers to the original state court complaint, however, was erroneous.

"Under Florida law, [t]he basic rule of contract interpretation is that the intention of the parties is to be determined from a consideration of the whole agreement." *In re Chira*, 567 F.3d at 1311 (quoting *Calderon v. J.B. Nurseries, Inc.*, 933 So.2d 553, 556 (Fla. Dist. Ct. App. 2006)) (internal quotation marks omitted). Upon

consideration of the Agreement in its entirety, it is clear that the term "operative complaint" in paragraph 14(a) refers to Banoub's complaint in the Adversarial Proceeding—the COD. *See generally* Doc. 11-10.

The Bankruptcy Court offers little justification for its finding apart from the unsubstantiated assessment that the AP did not seek damages. Doc. 1-3 at 5. While it is true that Banoub's action was one for declaratory judgment and not money damages, the Bankruptcy Court misinterprets the Agreement. *See* Doc. 1-3 at 4-5. In the event of Appellants' default, the Agreement obligates the Bankruptcy Court to enter Judgment against Appellants "for the full amount of the damages sought in the operative complaint." Doc. 11-10, ¶ 14(a)(i) (emphasis added); *see* Doc. 10-1, ¶¶ 29, 37, 45, 55; *infra* at 3-4.

Necessarily, therefore, it is the Bankruptcy Court who must determine the total present damages figure. Indeed, under the Agreement, the state court does not have jurisdiction to determine the amount of damages to be declared non-dischargeable. *Id.*, ¶ 17(d). And this follows logically considering that the lion's share of the attorney's fees and costs Banoub seeks in the OCD were incurred "enforcing the judgment and pursuing his rights…in this Bankruptcy Case and Adversary Proceeding." *See* Doc. 10-1, ¶ 37.

The Bankruptcy Court's unsupported finding also cuts against the plain language of the contract—especially when considered in its entirety. *In re Chira*, 567

F.3d at 1311. The language in the Agreement unambiguously directs "[e]ntry of Judgment **in the AP action**…for the full amount of damages sought in the **operative complaint**[,]" and makes no allusion to the state case. Doc. 11-10, ¶ 14(a)(i); *see also id.*, ¶ 10(f). Moreover, every other reference to the state court action in the Agreement refers to the *Judgment*—not a complaint—and rightly so, because it is the debt owed to Banoub memorialized in the state court *Judgment* which underlies his Adversarial Proceeding. [11] *See, e.g.*, Doc. 11-10 at 6 ("WHEREAS, the parties…seek[] to have [Appellants'] pre-petition debt for the judgment entered by the [state court]…").

The best evidence for the Court's conclusion is that the parties do not dispute it. *See* Doc. 17; Doc. 20. Banoub acknowledges the Bankruptcy Court's misinterpretation in his Answer Brief by blaming Appellants for inviting the error. *Id.* at 4-7. However, after reviewing the transcript, it is clear that during discussion of the "operative complaint" at the November 12, 2024, hearing, Appellants referred only to the COD. Doc. 11-7 at 12:19-25 (quoting paragraph 37 of the COD); *see also generally* Doc. 11-1. Appellants did not invite this error.[12]

---

[11] Indeed, the secondary command of the relevant provision entitles Banoub to take his Judgment from the Adversarial Proceeding in Bankruptcy Court *back* to state court to amend his Final Summary *Judgment* to reflect the new total, non-dischargeable debt he is owed in that dispute. Doc. 11-10, ¶ 14(a)(ii).

[12] On the contrary, Appellants' Motion to Approve the Agreement made it even more clear that the parties intended that the damages due upon default derived from the AP

### C. Damages

Finally, Appellants' spurious attempts to disown notice of multiple black letter statements regarding Banoub's total damages figure in the COD are unpersuasive, to say the least. *See, e.g.*, Doc. 10-1, ¶ 37. Despite Appellants' arguments to the contrary, the COD plainly stated that the total damages, as of August 9, 2023, amounted to $253,303.95—and that Banoub "continue[d] to incur damages."[13] *Id.*, ¶¶ 29, 37, 45. Indeed, the frivolity of Appellants' argument that attorney's fees cannot constitute damages here is exposed by their insistence that the original $52,628.07 judgement constitutes Banoub's sole "damages"—despite knowing that $32,170.33 of that sum was an additional award by the state court for attorney's fees and costs. *See* Doc. 10-13 at 15-16.

Appellants' alleged ignorance to the details of a binding, simple payment plan set forth in a straightforward settlement agreement—one which offered them

---

complaint:

> f.  If Debtor's [*sic*] default on the above-described payments, Adversary Plaintiff shall be entitled to **a stipulated judgment against Debtors in the Adversary Proceeding at the full amount of his damages as a non-dischargeable debt** and shall be entitled to return to state court for additional relief **consistent with the amount of the stipulated judgment**.

Doc. 11-10 at 4 (emphasis).

[13]  In no less than four places did Banoub clearly state in the COD that his total damages— for which he sought a declaration of non-dischargeability—were $253,303.95 *and growing*. Doc. 10-1, ¶¶ 29, 37, 45, 55.

relief from hundreds of thousands of dollars of debt—cannot be cured by the Bankruptcy Court's equitable powers. While Appellants are correct that the Bankruptcy Court erred regarding its identification of the "operative complaint" and its misplaced deference to the state court, their arguments regarding waiver and damages are unavailing.

Accordingly, it is **ORDERED** that the Bankruptcy Court's Order is hereby **AFFIRMED in part** and otherwise **REVERSED and REMANDED** for action consistent with this Order. The Bankruptcy Court **SHALL**:

1. Determine the total amount of damages for which Banoub is entitled to non-dischargeability for pursuant to the COD and the Agreement;

2. Issue an Amended Final Judgment declaring the total amount of Appellants' debt (the damages, as determined by the aforementioned process) non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6); and

3. **DIRECT** Banoub to take that Final Judgment to the state court for entry of an Amended Final Judgment to liquidate his damages in accordance with the Agreement (Doc. 11-10, ¶ 14(a)(ii)); and

**4.** Take any further necessary action consistent with this

Order.

The Clerk is directed to close the case.

**DONE** and **ORDERED** in Orlando, Florida on April 14, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties